Matter of Law Offs. of Michael S. Lamonsoff, PLLC v Law Offs. of Andrew Park, P.C. (2025 NY Slip Op 51213(U))

[*1]

Matter of Law Offs. of Michael S. Lamonsoff, PLLC v Law Offs. of Andrew Park, P.C.

2025 NY Slip Op 51213(U)

Decided on May 15, 2025

Supreme Court, Queens County

Livote, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 15, 2025
Supreme Court, Queens County

In the Matter of the Application of Law Offices of Michael S. Lamonsoff, PLLC, Petitioner,

against
Law Offices of Andrew Park, P.C., Respondent.

Index No. 707873/2024

Petitioners' Attorney
Jason Michael Lesnevec, Esq.
Law Office of Michael S. Lamonsoff
32 Old Slip, New York, NY 10005
(212) 962-1020
[email protected]
Respondent's Attorney
Inho A. Park, Esq.
Law Offices of Saasto Park and Associates, P.C.
450 Fashion Ave., Ste. 1805, New York, NY 10123
(212) 239-3680
[email protected]

Leonard Livote, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 were read on this motion to/for ATTORNEY - FEES.
The above-numbered documents were read on Motion Sequence 001 via Order to Show Cause by petitioner LAW OFFICES OF MICHAEL S. LAMONSOFF, PLLC ("Petitioner") and against respondent LAW OFFICES OF ANDREW PARK, P.C., ("Respondent") for an Order: (i) pursuant to Judiciary Law § 475, determining the amount of charging liens, if any of Respondent on the attorneys' fees in the matter of J.K., Father and Natural Guardian of P.K., and J.K., Individually, Index No.: 706726/2021, Supreme Court, Queens County ("underlying case") or, in the alternative; (ii) setting this matter down for a hearing to determine the amount of the charging lien; and (iii) for such other and further relief as this Court may deem just and proper.
Upon the foregoing documents, the motion is determined as follows.
The underlying case is a personal injury case arising from an automobile accident that occurred on March 12, 2021 in which the plaintiffs ("Plaintiffs") alleged injuries from defendants' ("Defendants") conduct. The instant action is a dispute between Plaintiff's outgoing firm, Respondent, and Plaintiff's incoming firm, Petitioner. These firms largely agree on the facts but dispute the value of each other's work in the context of the resolution of the underlying case.
Between on or about March 23, 2021 and on or about May 18, 2022, Respondent, as Plaintiffs' personal injury counsel, performed certain services: intake, review of police report/emergency room records/treatment records, file no-fault application, commence suit, review answer/demand for bill of particulars/combined demands, file request for judicial intervention, appear at Plaintiffs' initial deposition and review transcript, schedule independent medical examination, attend Plaintiffs' recorded statement with carrier, commence responses to Defendants' demand for a bill of particulars; and review Defendants' motion to dismiss.
Plaintiffs then substituted Respondent for Petitioner as their counsel. There is no indication that Respondent's termination was for cause. Respondent provided their case file to Petitioner.
Between on or about May 18, 2022 and March 12, 2024, Petitioner, as Plaintiffs' new counsel performed certain services: negotiations with adjuster, court conferences, retain medical and economic experts, review additional medical records, draft bill of particulars and discovery responses, oppose Defendants' motion to preclude, file Plaintiffs' motion for summary judgment (ultimately withdrawn), oppose Defendants' cross-motion for summary judgment, file Plaintiffs' motion to discontinue action as to infant, obtain liens, appear at Plaintiff's continued depositions, and appear at two mediations. The underlying case ultimately settled for $750,000.00 at the second mediation on March 12, 2024.
Petitioner commenced the within petition seeking an Order apportioning ninety-five percent (95%) of the attorneys' fee to Petitioner and five percent (5%) to the Respondent. Respondent opposes and posits that the value of their work amounts to forty percent (40%) of the attorneys' fee.
In response to the within petition and instant order to show cause, Respondent submitted an "affirmation seeking an Order" pursuant to Judiciary Law § 475 seeking, inter alia, a fair and equitable apportioning of legal fees between the parties.
Judiciary Law § 475, which codifies and extends the common-law charging lien, provides that "[f]rom the commencement of an action the attorney who appears for a party has a lien upon his [or her] client's cause of action which attaches to a verdict judgment or final order in his [or her] client's favor, and the proceeds thereof in whatever hands they may come. The court upon the petition of the client or attorney may determine and enforce the lien" (Rodriguez v. City of New York, 66 NY2d 825, 827, 498 N.Y.S.2d 351, 489 N.E.2d 238, quoting Judiciary Law § 475). [Before] an attorney can be granted a lien pursuant to Judiciary Law § 475 [they] must have appeared for the client by "participating in a legal proceeding on the client's behalf or by having [their] name affixed to the pleadings, motions, records, briefs, or other papers submitted in the matter" (Cataldo v Budget Rent A Car Corp., 226 AD2d 574, 574 [2d Dept 1996], citing Ebert v. New York City Health & Hosps. Corp., 210 AD2d 292, 292 - 293, 619 N.Y.S.2d 756).
"When there is a fee dispute between the current and discharged attorneys for the plaintiff in an action to which a contingent fee retainer agreement applies, the discharged attorney may elect to receive compensation immediately based on quantum meruit or on a contingent percentage fee based on his or her proportionate share of the work performed on the whole case" (Jules v. David, 210 AD3d 970, 972, 179 N.Y.S.3d 670 [internal quotation marks omitted]; see Matter of Cohen v. Grainger, Tesoriero & Bell, 81 NY2d 655, 658, 602 N.Y.S.2d 788, 622 N.E.2d 288).
The award of reasonable attorneys' fees is a matter within the sound discretion of the court (Messina v Wedderburn, 222 AD3d 741 [2d Dept 2023], citing Ficaro v. Alexander, 142 AD3d 1043, 1043, 37 N.Y.S.3d 611; see also Oz v. GCPKOP, LLC, 210 AD3d 689, 690, 178 N.Y.S.3d 122). In determining the appropriate percentage to which outgoing counsel may be entitled, the court should assesses not just quantitative but also qualitative factors, such as: "the time and labor spent by the incoming and outgoing counsel, the actual work performed, the difficulty of the questions involved, the skills required to handle the matter, the attorney's skills and experience, and the effectiveness of counsel in bringing the matter to resolution" (Cruz v. Olympia Trails Bus Co., 99-CV-10961 (JSR) (HBP), 2005 U.S. Dist. LEXIS 28155, at 7, 2005 WL 3071473 (S.D.NY Nov. 14, 2005), quoting Foppiano v. City of New York, 00-CV-7969 (FM), 2002 U.S. Dist. LEXIS 28517, at 10, 2002 WL 31202716 (S.D.NY Sept. 25, 2002)). While the court should consider each of these factors in turn, the court's analysis does not have to be a "scientific" inquiry, and the court has broad discretion to determine the proper percentage to which outgoing counsel is entitled (see Borg v. 86th & 3rd Owner, LLC, 08-CV-05913 (RJH), 2012 U.S. Dist. LEXIS 9223 at 22-23, 32, 2012 WL 234383 (S.D.NY Jan. 26, 2012)).
Here, Respondent elected a contingent percentage fee-based partition based on the proportionate share of the work performed on the whole case by each party.
Respondent relies on Kottl v. Carey, 85 AD3d 870, 871, 925 N.Y.S.2d 187 (NY App. Div. 2d Dep't 2011), in which the court awarded outgoing counsel 20% of the attorneys' fee. Respondent, like the outgoing counsel in Kottl, did Plaintiffs' intake, [*2]secured some initial medical/police records, contacted the insurance carrier, scheduled appointments, and commenced suit. But Petitioner here qualitatively and quantitatively did more than the incoming counsel did in Kottl, and a similar finding of 20% fee to the Respondent is not supported.
The incoming counsel in Kottl attended a preliminary conference, served responses to a preliminary conference order, and negotiated a settlement shortly thereafter. Petitioner here, in contrast, was responsible for much more. The record establishes that Petitioner spent nearly every month over the course of two years working on Plaintiffs' case. Petitioner engaged in motion practice on discovery and dispositive issues, secured more medical records, filed a bill of particulars, retained experts, and negotiated numerous settlement discussions with the adjuster before finally settling the matter over the course of two mediation conferences.
The effectiveness of counsel as well as the difficulty of the work performed also indicate that the Respondent here is entitled to a larger percentage of the contingent fee than the incoming firm in Kottl. While the work completed by Respondent may have contributed to settling the case, it was Petitioner that actually "set the table for settlement discussions" and successfully resolved the dispute (Borg at 31, 2012 WL 234383). Additionally, the underlying case was settled more than two years after the termination of Respondent's representation. Thus, the actions of the Petitioner were "far more crucial to the eventual settlement" of the case than any actions taken by the Respondent (Borg at 32, 2012 WL 234383).
Respondent does not provide any information about the remaining factors: the difficulty of the questions involved, the skills required to handle the matter, or the attorney's skills and experience. While the court does not find that either firm's skills and experience to be lacking, the difficulty of the questions involved, and the skills required to handle the matter also favor the Petitioner. Petitioner was responsible for the more challenging aspects of Plaintiffs' case, including preparing for and attending mediation conferences and negotiations with adjusters, counseling Plaintiffs during the settlement process, and engaging in substantive and dispositive motion practice. In Borg, the court found that while the outgoing counsel was responsible for initiating the lawsuit and completed tasks "common to the start of any legal representation in a civil lawsuit on behalf of a personal-injury plaintiff" including collecting medical records and preparing the complaint, the difficulty of those tasks "pale[d] in comparison to the tasks undertaken" by the incoming counsel (Borg at 26, 2012 WL 234383). The incoming firm in Borg, like Petitioner here, was responsible for a "much larger amount of preparation" including completing discovery and preparing for and conducting a successful mediation. Id.; see also Yungbaek Jeon v Riley, 18-CV-2612(NGG)(PK), 2021 WL 926086, at 4 [EDNY Mar. 11, 2021]
For these reasons, the attorneys' fee should be split ten percent (10%) to Respondent and ninety-percent (90%) to Petitioner. Accordingly, it is
ORDERED that the branch of Petitioner's motion seeking a determination of the charging lien on attorneys' fees associated with the case of J.K., Father and Natural Guardian of P.K., and J.K., Individually, Index No.: 706726/2021, Supreme Court, Queens County, is granted so far that Petitioner is entitled to ninety percent (90%) and Respondent is entitled to ten percent (10%) of said attorneys' fees; and it is further
ORDERED that Petitioner shall serve notice of entry of this Order within thirty (30) days of the date of this Order.
Any other and/or further relief requested and not addressed is denied. This constitutes the Order of the Court.
DATE 5/15/2025
LEONARD LIVOTE, J.S.C.